# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

NICHOLAS WARNER JONES,                    *

Plaintiff                                 *

v                                         *           Civil Action No. RDB-11-3120

J. MICHAEL STOUFFER et al.,[1]            *

Defendants                                *
                                         ***

## MEMORANDUM OPINION

Plaintiff Nicholas Warner Jones ("Jones") filed the above-captioned Complaint pursuant to 42 U.S.C. §1983. Defendants J. Michael Stouffer, Bobby P. Shearin, J. Phillip Morgan, and MDDOC HDQRS, by counsel, have filed a Motion to Dismiss, or in the Alternative for Summary Judgment. ECF No. 31. Plaintiff has responded. ECF No. 33, 37, & 39.[2] After review of the pleadings, and applicable law, the Court determines that a hearing is unwarranted. *See* Local Rule

---

[1] By way of supplemental complaint Plaintiff has named Warden Frank Bishop, Jr., Assistant Warden Richard Graham, and Security Chief Michael P. Thomas as additional Defendants. The Clerk shall be directed to amend the docket accordingly. Although these Defendants have not been properly served with the Complaint, for the reasons that follow Plaintiff's complaint against them cannot proceed.

[2] Jones's complaints regarding conditions of confinement and events occurring at JCI, contained in his additional opposition to the dispositive motion (ECF Nos. 37 & 39) are not properly before the Court and will not be considered. If Plaintiff believes his constitutional rights have been violated he is free to file a new complaint.

Jones's request for appointment of counsel, contained in correspondence to the Court (ECF No. 34) shall be denied. A federal district court judge's power to appoint counsel under 28 U.S.C. § 1915(e)(1), is discretionary, and may be considered where an indigent claimant presents exceptional circumstances. *See Cook v. Bounds*, 518 F.2d 779 (4th Cir. 1975); *see also, Branch v. Cole*, 686 F.2d 264 (5th Cir. 1982). The question of whether such circumstances exist in a particular case hinges on the characteristics of the claim and the litigant. *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984). Upon careful consideration of the motions and previous filings by Jones, the Court finds that he has demonstrated the wherewithal to either articulate the legal and factual basis of his claims himself or secure meaningful assistance in doing so. The issues pending before the Court are not unduly complicated. Therefore, there are no exceptional circumstances that would warrant the appointment of an attorney to represent Jones under §1915(e)(1).

1

105.6 (D. Md. 2011). For the reasons that follow, the Motion to Dismiss, construed as a Motion for Summary Judgment, will be GRANTED.

**Background**

Jones, an inmate currently confined at the Jessup Correctional Institution ("JCI"), alleges that on November 21, 2010, while housed at North Branch Correctional Institution ("NBCI"), he was attacked by his cell mate Martin Morgan. Plaintiff states that the attack occurred within five feet of Maryland Division of Corrections security officers Fazenbaker, Michaels, and Morgan. Jones claims that while being transported to the infirmary after the attack his fingernail clipper, toothbrush and shower shoes were stolen. Plaintiff also alleges that on that same date while in the infirmary an unnamed security officer "tried exploitatively, but abortively, to push himself into my rectum which I saw when my balance collapsed during said officer's video security camera recorded attempted pre-textual body-cavity search of [Plaintiff] at the common area Housing Unit #1-B-tier dayroom." ECF No. 1.

Jones further claims that from November 27 through November 29, 2010, correctional officers denied him prescribed medication, soap, hygiene items, a shower, a bed, and clean clothes. *Id*.

On May 29, 2011, Jones states he was sprayed with a red chemical gas by Officer Browning. Jones states that he attempted to "disable inmate Alex Smith's receipt of Officer Browning, C.O. II's chemical-gas canister" after Jones was stabbed while he slept. Jones states that after he left the cell Browning stated to him, "I should shoot you again." *Id*. Thereafter, Jones states that Lt. Oradorff "ordered" correction staff to torture him from May 29, 2011 at approximately 11:00 p.m. until May 30, 2011, at approximately 4:00 a.m. by denying him showers to wash the chemical from

2

his eyes and body, by denying him ice, bacitracin or qualified medical diagnosis or treatment and by locking him "in the cage" of the Housing Unit #1 B-Tier dayroom with the fan off. *Id*.

By way of a supplemental complaint, Jones alleges that on December 1, 2011, he was released three days early from disciplinary segregation while housed at the Western Correctional Institution ("WCI"). Jones claims that while walking to breakfast he was attacked by an unknown inmate. ECF No. 19.

Jones has not named any of correctional officers as Defendants. Rather, Jones has brought his complaint solely against supervisory officials claiming that each of the named supervisory Defendants had a duty to provide humane conditions of confinement, free of deliberate indifference to substantial risks of danger to his safety. He does not state any specific factual allegations against the named Defendants or indicate how they were involved in the conduct alleged. ECF Nos. 1 & 19.

Defendants provide the following version of events. On November 21, 2010, NBCI Officers Albert Fazenbaker and Daniel Michael were conducting a formal count of Jones's housing unit when Jones told them he needed to be seen by medical staff as he had fallen from his bunk. The officers did not notice any injuries but advised Jones that they would contact medical on his behalf. ECF No. 31, Exs, A, B. C. The nurse was notified and she indicated she would evaluate Jones on her next visit to the tier. *Id*., Ex. A. Due to the increased number of cell fights Lt. Durst instructed Sgt. Gilpin to check on Jones. *Id*., Ex. A. Gilpin and Fazenbaker retuned to Jones cell and observed Plaintiff had a severely bruised and swollen face. *Id*. Durst was told of Jones's injuries. Jones was escorted to the infirmary where a nurse assessed and treated his injuries. The nurse consulted with a physician who ordered Jones admitted to the infirmary at WCI. *Id*., Ex. A, p. 21, 25, 28, 28, 38-40 and Ex. D.

On November 27, 2010, Jones refused to comply with Correctional Officer McKenzie's repeated orders that he return to his cell. *Id*., Ex. E. As a result of his refusal Jones was placed in a contingency cell and later that day served with Notice of Inmate Rule Violation charging him refusing a housing assignment. Jones was found guilty of the charge on December 2, 2010. *Id*.

On May 28, 2011, Correctional Officer Browning was conducting an informal count when she observed Jones and his cellmate, Alex Smith, engaged in an altercation. Browning ordered the inmates to stop fighting and lay on the floor. Both inmates complied while other officers arrived to assist Browning. Browning opened the security slot and secured Smith. Once Smith was restrained Jones attacked him by repeatedly punching him with a closed fist. Jones ignored several orders to cease and Browning applied a burst of pepper spray. Once Jones complied with orders to stop and be cuffed he was taken to the medical unit and evaluated and treated by a nurse. Medical records indicated he was provided a shower to wash off the pepper spray. *Id*., Exs F & D, p. 76-87. Jones was subsequently served with an inmate rule infraction and found guilty of the charges. *Id*., Ex. G. Internal investigation into the use of force concluded that the level of forced used was appropriate and in accordance with Department of Corrections policy. *Id*., Ex. F.

**Standard of Review**

A.  Motion to Dismiss

The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b) (6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999). The dismissal for failure to state a claim upon which relief may be granted does not require defendant to establish "beyond doubt" that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561-62

4

(2007). Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Id*. at 562. The court need not, however, accept unsupported legal allegations, *see Revene v. Charles County Comm'rs,* 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain,* 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *see United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

In reviewing the complaint in light of a Motion to Dismiss pursuant to Fed. R. Civ. Proc. 12(b)(6) the court accepts all well-pleaded allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *See Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005); *Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir. 1997); *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.,* 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (stating that a complaint need only satisfy the "simplified pleading standard" of Rule 8(a)).

The Supreme Court of the United States explained a "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Nonetheless, the complaint does not need "detailed factual allegations" to survive a motion to dismiss. *Id.* Instead, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id*. at 563. Thus, a complaint need only state "enough facts to state a claim to relief that

5

is plausible on its face." *Id*. 570.

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S.662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, at 678. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' " *Id*. at 679 (quoting Fed.R.Civ.P. 8(a)(2)).

B.   Summary Judgment

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that, "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)).  The court should

6

"view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

In *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986) the Supreme Court explained that in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id*. at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact. No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

**Analysis**

A. Sovereign Immunity

Under the Eleventh Amendment to the United States Constitution, a state, its agencies and departments are immune from suits in federal court brought by its citizens or the citizens of another state, unless it consents. *See Penhurst State School and Hospital v. Halderman*, 465 U. S. 89, 100 (1984). While the State of Maryland has waived its sovereign immunity for certain types of cases brought in State courts, *see* Md. State Gov't Code Ann., § 12-202(a), it has not waived its immunity under the Eleventh Amendment to suit in federal court. Thus, Jones's complaint against MDDOC HDQRS—Maryland Department of Corrections Headquarters, an agency of the State of Maryland, is barred by the Eleventh Amendment.

B. Supervisory Liability

The doctrine of *respondeat superior* does not apply in §1983 claims. *See Love-Lane v. Martin*, 355 F. 3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under §1983); *see also Trulock v. Freeh*, 275 F. 3d 391, 402 (4th Cir. 2001) (no respondeat superior liability in a *Bivens* suit). Liability of supervisory officials must be "premised on 'a recognition that supervisory indifference or tacit authorization of subordinates'" misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F. 3d 228, 235 (4th Cir. 2001), citing *Slakan v. Porter*, 737 F. 2d 368, 372 (4th Cir. 1984). Supervisory liability under § 1983 must be supported with evidence that (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff, (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices, and (3) there was an affirmative causal link between the supervisor's

inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F. 3d 791, 799 (4th Cir. 1994). Plaintiff has pointed to no action or inaction on the part of any of the named Defendants that resulted in a constitutional injury, and his claims against each of them shall be dismissed.

C. Failure to Protect

Even if Jones had named as Defendants individual correctional staff his claims would still fail. To the extent Jones alleges correctional staff were deliberately indifferent in failing to provide adequate supervision and security to protect him and as such his right to be free from cruel and unusual punishment has been violated, the Eighth Amendment does recognize this right. *See Belcher v. Oliver*, 898 F.2d 32, 34 (4th Cir. 1990).

As noted by the Supreme Court in *Farmer v. Brennan*, 511 U.S. 825 (1994).

> Prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners. Having incarcerated persons with demonstrated proclivities for antisocial criminal, and often violent, conduct, having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course. Prison conditions may be restrictive and even harsh, but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penological objective any more than it squares with evolving standards of decency. Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society.

*Id.* at 833 (internal quotations and citations omitted). In a failure to protect claim, a prisoner must show, first, that the harm he suffered was objectively serious, and second, that prison officials acted with deliberate indifference. *Id.* at 834.

Deliberate indifference in the context of a failure to protect claim means that defendant "knows of and disregards an excessive risk to inmate health or safety; the official must both be

9

aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Unless a prison official actually makes this inference, he does not act with deliberate indifference, even where his actions violate prison regulations or can be described as stupid or lazy. *Rich v. Bruce*, 129 F.3d 336, 339-40 (4th Cir. 1997). Prison officials have a duty not to disregard a known risk to inmate safety. *Pressly v. Hutto*, 816 F.2d 977 (4th Cir. 1987). In a prison setting, confrontations among inmates are a daily occurrence as prisoners engage in an unending struggle for position and power among the incarcerated. Such altercations among inmates are common and are more than likely ones with which prison staff are all too familiar. While recognizing that advance notification of a substantial risk of assault posed by a particular fellow prisoner is not required to sustain a claim under the Eighth Amendment, *Farmer* 511 U.S. at 849, the record is devoid of evidence that correctional staff were subjectively aware that Jones was subject to an excessive risk of harm.

As to the November 21, 2010 assault, Jones has failed to allege any facts that the officers failed to protect him from a known harm. Rather, Jones simply alleges that officers were approximately 5 feet away when the attack occurred. The evidence demonstrates that neither officer witnessed the attack or had any knowledge of the assault. To the contrary, they found Jones on the floor of his cell while conducting a count of the tier. Plaintiff does not allege that he undertook any effort to notify these officers or other prison officials that he feared for his safety from this cell mate. Nothing suggests that correctional personnel were aware that Jones was likely to be assaulted by his cellmate or that the cellmate was out to cause him harm.[3]

Similarly, the attack described by Jones occurring on December 1, 2011, while walking to

---

[3] Jones has failed to identify the officer who allegedly assaulted him in the medical unit. Jones was interviewed on

10

breakfast, was spontaneous and by an unknown assailant. Jones states that he was taken by surprise in the attack and has been unable to name his attacker. There is simply no evidence that any correctional staff was aware that Jones could be harmed while walking from his tier to the dining area. Plainly, the assaults described by Jones were spontaneous and unexpected. In short, Jones has failed to come forth with any evidence that prison officials were in fact aware of an excessive risk of harm to his safety.

Even if the Court could concluded that correctional staff were aware of the risk of harm to Jones, the evidence of record simply is not sufficient to show that corrections personnel were deliberately indifferent to the consequences that might flow from such risk. Indeed, "[p]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted. A prison official's duty under the Eighth Amendment is to ensure " 'reasonable safety.' " *Farmer* 511 U.S. at 844. Nothing in the record suggests that the officers on duty did not respond promptly to end the assaults by ordering the inmates to cease and radioing for assistance as soon as they became aware of the attack. Jones has presented no evidence to show that correctional staff failed to respond reasonably in the face of an attack.

D.  Medical Care

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). To state an Eighth Amendment claim for denial of medical care, Jones must demonstrate that the actions of defendants (or their failure to act) amounted to deliberate indifference to a serious

---

several occasions regarding the events surrounding the November 21, 2010 assault and never made such an

medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, Plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. at 837.

As noted above, the medical condition at issue must be serious. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry. The second component of proof requires "subjective recklessness" in the face of the serious medical condition. *Farmer*, 511 U.S. at 839–40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995), quoting *Farmer,* 511 U.S. at 844.

Jones alleges that from November 27-29, 2010, correctional officers denied him Dubaine, Ibupofen, and Zantac as well as various toiletries. Jones has failed to allege that he was suffering from a "serious medical need" at the time he was denied his medication. Further, Jones has failed to allege any specific facts demonstrating that any correctional staff acted with the requisite state of mind which would demonstrate a deliberate indifference to Jones's serious medical needs. Further, Jones's allegation that a delay of two days in medical treatment rose to a constitutional level, requires him to "place verifying evidence in the record to establish the detrimental effect of delay in

---

allegation against an officer. ECF No. 31, Ex. A & Ex. D.

medical treatment." *See Hill v. DeKalb Regional Youth Detention Center*, 40 F.3d 1176, 1188 (11th Cir. 1994). This he has failed to do.

E. Excessive Force

Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U. S. 1, 6-7 (1992). This Court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *See Whitley v. Albers*, 475 U. S. 312, 321 (1986). The absence of significant injury alone is not dispositive of a claim of excessive force. *See Wilkens v. Gaddy*, 591 U.S. __, 130 S. Ct. 1175 (2010). The extent of injury incurred is one factor indicative of whether or not the force used was necessary in a particular situation, but if force is applied maliciously and sadistically liability is not avoided simply because the prisoner had the good fortune to escape serious harm. *Wilkens,* 130 S. Ct. at 1177.

Defendants deny that Jones was assaulted as alleged in the complaint. Record evidence demonstrates that Browning used pepper spray in a good faith effort to restore order. Jones refused direct orders to stop hitting his restrained cellmate. Only after Jones repeatedly refused to comply did Browning use pepper spray. The force used was minimal and was undertaken in order to end an assault upon an inmate and restore order. Moreover, the force used was necessary in order to stop Jones from harming another inmate. Additionally, the force was tempered in that Jones was given an opportunity to comply with lawful orders before the use of pepper spray. Jones was taken for

13

medical attention where he was permitted to wash off the pepper spray. In light of the foregoing, if the proper Defendants were named they would be entitled to summary judgment.

F.      Property

Jones alleges that when he was taken to the infirmary items of personal property were lost or stolen. In the case of lost or stolen property, sufficient due process is afforded to a prisoner if he has access to an adequate post-deprivation remedy. *See Parratt v. Taylor*, 451 U. S. 527, 542-44 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U. S. 327 (1986). The right to seek damages and injunctive relief in Maryland courts constitutes an adequate post deprivation remedy.[4] *See Juncker v. Tinney*, 549 F. Supp. 574, 579 (D. Md. 1982).[5]   Even if Jones's property was improperly lost, stolen or otherwise destroyed, such a claim does not rise to a constitutional violation.

A separate Order follows.

June 19, 2013                                                              _____/s/_____
Date                                                                               RICHARD D. BENNETT
                                                                                    UNITED STATES DISTRICT JUDGE

---

[4] Plaintiff may avail himself of remedies under the Maryland's Tort Claims Act and through the Inmate Grievance Office.

[5] Although *Juncker* dealt with personal injury rather than property loss, its analysis and conclusion that sufficient due process is afforded through post deprivation remedies available in the Maryland courts also applies to cases of lost or stolen property, given *Juncker's* reliance on *Parratt* in dismissing plaintiff's due process claim.